# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

VICKIE LYNN HENDRIX                                                    PLAINTIFF

v.                                    NO. 4:14-cv-00234 JJV

CAROLYN W. COLVIN, Acting Commissioner                    DEFENDANT
of the Social Security Administration

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Vickie Lynn Hendrix ("Hendrix") began this case by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, she challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Hendrix maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole and offers several reasons why.[1] She first maintains that error was committed at step two of the sequential evaluation process. She maintains that her plantar fasciitis and gastrocnemius equinus are severe impairments, and he failed to so find. Hendrix also maintains that the ALJ failed to relate those impairments to her obesity.

At step two, the ALJ is obligated to identify the claimant's impairments and determine whether they are severe. An impairment is severe if it has "more than a

---

[1]The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." <u>See</u> <u>Boettcher v. Astrue</u>, 652 F.3d 860, 863 (8th Cir. 2011).

minimal effect on the claimant's ability to work." See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) [internal quotations omitted]. The determination is strictly a medical determination. See Bowen v. Yuckert, 482 U.S. 137 (1987). Once a claimant's impairments are identified, the ALJ is required to consider all of the claimant's impairments, both severe and non-severe, in assessing her residual functional capacity.

The ALJ made no mention of Hendrix's plantar fasciitis and gastrocnemius equinus at step two. His failure to do so is not prejudicial error. He considered the impairments in assessing her residual functional capacity and specifically considered them "in conjunction with her obesity." See Transcript at 18.[2] He accommodated the pain associated with her plantar fasciitis and gastrocnemius equinus in limiting her to sedentary work with some limitations, and substantial evidence on the record as a whole supports his assessment of her residual functional capacity.

Hendrix maintains that the impact of her obesity was not considered in assessing

---

[2]The ALJ specifically found the following:

… After starting with conservative treatment, Dr. Burks diagnosed the claimant with plantar fasciitis and gastrocnemius equinus and performed surgery on her left foot to lengthen her Achilles tendon. Following the surgery, the claimant still complained of pain, joint stiffness, and decreased sensitivity was well as experienced some edema in her lower left calf and ankle. … These findings support the residual functional capacity, in that the claimant's pain, in conjunction with her obesity, would preclude her from more than sedentary work with various postural limitations. …

See Transcript at 18. When the ALJ represents that he considered a matter, the Court takes him at his word. See Hackett v. Barnhart, 395 F.3d 1168 (10th Cir. 2005) (court takes lower tribunal at its word when it declares it considered matter). Here, there is nothing to suggest that he did not do as he represented, that is, consider Hendrix's plantar fasciitis and gastrocnemius equinus in conjunction with her obesity.

her residual functional capacity. She notes that no explanation was given for how her obesity impacts her ability to walk and stand or how it impacts her other impairments.

The ALJ is obligated to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010).

The ALJ considered at step three the impact Hendrix's obesity has on her other impairments and then considered it in assessing her residual functional capacity.[3] He appears to have found that it has some impact on her residual functional capacity as he limited her to sedentary work with some limitation, and substantial evidence on the record as a whole supports his finding. The evidence does not suggest that her obesity causes greater limitation than that found by the ALJ. For instance, the progress notes compiled by Dr. Jesse Burks, D.P.M., ("Burks") and Dr. Ricardo E. Alvillar, M.D., ("Alvillar") make little mention of the impact Hendrix's obesity has on her foot and calf

---

[3]        The ALJ specifically found the following:

With regard to [Hendrix's] obesity, the undersigned has given consideration to Social Security Ruling 02-1p, which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity. When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitation resulting from the obesity in the residual functional capacity assessment in addition to any limitation resulting from any other physical or mental impairment identified. The claimant testified that she is 5'5" and weighs 180 pounds. Based on these measurements, the claimant's body mass index is calculated to be 31.28, which is classified as obese.

See Transcript at 16.

problems and her fibromyalgia and joint pain. <u>See</u> Transcript at 249-274, 329-336, 372-373, 375-378, 381-388, 389-404, 406-415. Although Hendrix testified that she experiences severe pain and has limited mobility, <u>see</u> Transcript at 34-36, there is little evidence her pain or lack of mobility is exacerbated by her excessive weight.

Hendrix next maintains that her residual functional capacity was not properly assessed. She so maintains for two reasons, the first reason being that the ALJ failed to give controlling weight to the opinions of a treating physician but instead gave controlling weight to the opinions of a state agency medical consultant.

The ALJ is obligated to consider the medical evidence in assessing a claimant's residual functional capacity. <u>See</u> <u>Cox v. Astrue</u>, 495 F.3d 614 (8th Cir. 2007). A treating physician's medical opinions are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with the other substantial evidence. <u>See</u> <u>Choate v. Barnhart</u>, 457 F.3d 865, 869 (8th Cir. 2006) (internal quotations omitted). A treating physician's opinions are not automatically controlling, though, because "the record must be evaluated as a whole." <u>See</u> <u>Id</u>. The ALJ may discount or even disregard a treating physician's opinions if "other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of his opinion." <u>See</u> <u>Id</u>. (internal quotations omitted).

The ALJ reviewed the medical evidence in assessing Hendrix's residual functional capacity and largely credited the opinions offered by Burks, Alvillar, and Dr. Majid Saleem, M.D., ("Saleem"), all of whom were Hendrix's treating physicians. There was one

opinion by a treating physician, though, that the ALJ discounted. The ALJ gave "little weight" to an opinion offered by Burks that Hendrix requires thirty-minute rest periods every two hours. See Transcript at 19, 416-417.[4] In addition, the ALJ gave "significant weight" to the opinions of Dr. Jerry Thomas, M.D., ("Thomas"), a state agency medical consultant who found that Hendrix can perform the full range of sedentary work. See Transcript at 19, 282-289.

The ALJ's decision to discount Burks' opinion is not something the Court takes lightly. A treating physician is "'usually more familiar with a claimant's medical condition than are other physicians ...'" See Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir. 1991) [quoting Schisler v. Heckler, 787 F.2d 76, 81 (2nd Cir. 1986)]. In this instance, though, substantial evidence on the record as a whole supports the ALJ's decision to discount Burks' opinion that Hendrix requires thirty-minute rest periods every two hours.

The ALJ could and did discount Burks' opinion because it is inconsistent with his own treatment records. Burks examined Hendrix on several occasions between January 2012 and February 2013, see Transcript at 372-373, 375-378, 381-388, and performed surgery on her left foot and calf to lengthen her Achilles tendon in October 2012, see

---

[4]The ALJ specifically found the following:

... Significant weight is also given to Dr. Burks who indicated the claimant is restricted in bending, kneeling, pushing, pulling, and climbing stairs and ladders. ... However, the treatment records discussed above do not support Dr. Burks' conclusion that the claimant would require thirty-minute rest periods every two hours. As such, the undersigned give little weight to this statement. ...

See Transcript at 19.

Transcript at 406-415. His post-operative progress notes reflect that although she continued to experience some pain, her condition gradually improved. <u>See</u> Transcript at 382-383, 385-388. For instance, in a January 2013 progress note, Burks observed the following: "Ms. Hendrix returns today stating that she is doing better. She has been wearing the cast. She does not like it, but feels it has made a significant difference." <u>See</u> Transcript at 383. He noted "[d]ecreased edema of the left foot" and "decreased sensitivity at both calf sites and the plantar fasciotomy site." <u>See</u> Transcript at 383. Giving Burks' progress notes a fair reading, the ALJ could and did find nothing to support Burks' opinion that Hendrix requires thirty-minute rest periods every two hours.

Burks' opinion is also inconsistent with the treatment records of the other medical professionals. Alvillar saw Hendrix on several occasions for what he characterized as a "central pain processing disorder, previously known as fibromyalgia." <u>See</u> Transcript at 391. His progress notes from the period following Hendrix's surgery do not suggest that she requires thirty-minute rest periods every two hours. <u>See</u> Transcript at 390-393. In a January 2013 progress note, he noted that she was experiencing difficulty recovering from her surgery but, in large part, only prescribed medication for her generalized joint pain. <u>See</u> Transcript at 391.

Hendrix maintains that the ALJ accorded too much weight to Thomas' opinions. The record reflects, though, that the ALJ gave the opinions only "significant weight." There is nothing to suggest that such weight was inappropriate. <u>See</u> <u>Anderson v. Heckler</u>, 738 F.2d 959 (8th Cir. 1984) (consulting physician's findings to be given limited weight).

Notwithstanding the foregoing, a fair reading of the ALJ's decision reflects that

he did not fully embrace Thomas' opinions as the ALJ found Hendrix has greater limitations than Thomas found. Thomas opined that Hendrix can perform a full range of light work. See Transcript at 282-289. The ALJ found, though, that in light of Hendrix's testimony and an MRI confirming "a lumbar disc protrusion at L4-L5," additional "postural limitations and manipulative limitations" were warranted in determining her residual functional capacity. See Transcript at 19.

Hendrix offers a second reason why her residual functional capacity was not properly assessed. She maintains that the ALJ made an inadequate evaluation of her pain, in part, because he made an inadequate assessment of her daily activities.

As a part of assessing the claimant's residual functional capacity, the ALJ must evaluate the claimant's subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by considering "in addition to objective medical evidence, any evidence relating to: [the] claimant's daily activities; duration, frequency, and intensity of pain; dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions." See Id. at 1218 [citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)].

The ALJ evaluated Hendrix's subjective complaints as a part of assessing her residual functional capacity. See Transcript at 17-20. He found that the credibility of her subjective complaints were "weakened by her activities of daily living." See Transcript at 19-20.

Although a more extensive evaluation of Hendrix's subjective complaints would have been helpful, the ALJ's evaluation is one of the acceptable evaluations permitted

by the record and is supported by substantial evidence on the record as a whole. The ALJ adequately considered the medical evidence and could and did find it to be consistent with Hendrix's ability to perform sedentary work with some limitations. The ALJ also considered the non-medical evidence, including her activities of daily living. As the ALJ found, Hendrix cares for her two children, although she does receive some help doing so from her mother and sister-in-law. <u>See</u> Transcript at 39-41, 151. She can also make simple meals, wash dishes, do laundry, drive an automobile, and shop. <u>See</u> Transcript at 151-154. She represented in an agency document that she spends very little time on her hair and counting change, in large part, because she cannot hold her arms up for very long. <u>See</u> Transcript at 151, 153. There is no evidence, medical or otherwise, to support such an extreme limitation.

The ALJ is charged with the responsibility of assessing credibility, and Hendrix has offered no legitimate reason for questioning the evaluation of her credibility. The evaluation of the evidence made by the ALJ in light of the <u>Polaski v. Heckler</u> factors will not be disturbed.

Hendrix last maintains that the ALJ posed, and adopted the answer to, an inadequate hypothetical question. She maintains that the question failed to include her need for a wheelchair and failed to take into account the impact of her plantar fasciitis and gastrocnemius equinus. The record establishes that the question was not improper, and he did not err in relying upon its answer. There is no evidence that use of a wheelchair was ever recommended, and he accommodated her feet problems by limiting her to sedentary work with some limitations.

Given the foregoing, there is substantial evidence on the record as a whole to support the ALJ's findings. Hendrix's complaint is therefore dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 14th day of April, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE